WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Yves Geurden, et al.,

    Plaintiffs,

v.

Quantum Transportation LP, et al.,

    Defendants.

No. CV-16-00642-PHX-JAT

**ORDER**

## I. Stipulated Judgment

On June 26, 2017, Plaintiffs and Defendant Vahik Alaverdyan and Quantum Transportation L.P. ("Quantum") agreed to enter into a stipulated judgment against these two Defendants. (Doc. 42). The proposed stipulated judgment does not mention defendants Jane Doe Alaverdyan (Vahik Alaverdyan's wife) or Dole Fresh Fruit Company ("Dole"). However the stipulation itself says pursuant to an agreement of the "parties," and the judgment does not contain language pursuant to Federal Rule of Civil Procedure 54(b), so presumably this judgment would resolve the whole case, with no judgment being entered against either Mrs. Alaverdyan or Dole.

In their stipulation, the parties acknowledged that they were entering into a "Damron Agreement." (Doc. 42). The Court inquired whether it had any duty to investigation the reasonableness of the amount of the stipulated judgment (in this case $25,000,000.00) before entering the judgment. (Doc. 43).

## II. Damron v. Morris Agreements

Plaintiffs, Defendant Quantum, and Defendant Vahik Alaverdyan ("the settling parties") responded to the Court's inquiry and argued that when the parties enter into a Damron Agreement, the Court does not conduct a reasonableness inquiry. (Doc. 48 at 4-6). Conversely, the settling parties concede that when the parties enter into a Morris Agreement, the Court does have a duty to conduct a reasonableness inquiry. (Doc. 48 at 4-6). The settling parties further noted that a Damron Agreement is used when the insurance company has refused to defend, and a Morris Agreement is used when the insurance company is defending under a reservation of rights. (Doc. 48 at 4-6).

Dole responded to the Court's inquiry by stating that it is not a party to the Damron Agreement. (Doc. 49). Further Dole argued that neither defense of this action, nor a request for indemnification, have been tendered to Dole. (Doc. 49). Finally, citing nothing, Dole stated that a reasonableness hearing on the Damron agreement would be required in this case, but then went on to explain why a reasonableness hearing is required between an indemnitor and indemnitee. (Doc. 49 at 2).

Also in response to the Court's inquiry, two insurance companies moved to intervene: Greenwich Insurance Company and XL Specialty Insurance Company (hereinafter "intervenors"). (Docs. 46 and 47). The intervenors made several arguments in opposition to the Court entering the stipulated judgment.

### A. Coverage

The first argument made by intervenors is that they had no duty to defend. (Doc. 47 at 3). The Court finds that issue is the subject of another case (CV 17-2270) and not relevant to whether the stipulated judgment may be entered in this case.[1] Specifically, the Court rejects the intervenor's argument that this Court must find a duty to defend on the part of a non-party insurance company before the Court ever enters a judgment pursuant

---

[1] This Court has already denied intervenors' request (part of Doc. 47-2) that this case be stayed pending the resolution of CV 17-2270. (Doc. 57 at n.1).

- 2 -

to a Damron Agreement.[2]

**B. Tender**

Next, intervenors argue that defense of this action was never tendered to them. (Doc. 47-2 at 6). In response, the settling parties provided a copy of a June 15, 2016 letter from counsel for Quantum and Mr. Alaverdyan tendering the defense of this case to intervenors. (Doc. 55-2 at 2-3). Intervenors reply to this evidence by claiming that that XL never received the letter. (Doc. 56 at 9).

The settling parties also provided a copy of a November 14, 2016 letter counsel for Hallmark sent to XL formally tendering defense of this case to Greenwich. (Doc. 55-3 at 2-3). While intervenors admit to receiving this letter, they argue it should not "count" as a tender because it was not sent by counsel for Quantum or Mr. Alaverdyan. (Doc. 56 at 9-10). However, in responding to the November 14, 2016 letter, intervenors' claims specialist said, "XL Catlin, on behalf of Greenwich Insurance Company, acknowledges receipt of the attached letter … wherein you tender defense and indemnity on behalf of Quantum Transportation… for the case styled Yves Geurden, et al., v. Quantum Transportation, et al." (Doc. 55-4 at 2).

The Court finds that Quantum's insurance company, Hallmark, could and did tender defense of this case on Quantum's behalf; and, moreover, intervenors accepted such letter as formal tender of defense and indemnity. Accordingly, the Court finds that defense of this case was tendered to intervenors. Further, the Court finds that either by the June 15, 2016 letter, or by the November 14, 2016 letter, Mr. Alaverdyan tendered defense and indemnity to intervenors. Specifically, on March 9, 2017, intervenors wrote Mr. Alaverdyan a seven page single spaced letter denying coverage. (Doc. 54-1). While that letter disputes formal tender, clearly intervenors were on notice of the claim and the current lawsuit and knew that Mr. Alaverdyan sought coverage under intervenors' policy. Thus, intervenors argument that they did not received the June 15, 2016 letter, which

---

[2] As a result of this finding, the Court will not address in this case any arguments regarding waiver or assignment of rights under the policies.

- 3 -

1 clearly and unequivocally tendered defense of this case, is belied by the fact that they formally denied coverage. Thus, the Court concludes that both Quantum and Mr. Alaverdyan tendered defense and indemnity of this case to intervenors.

**C. Trigger**

Further, intervenors argue that the settling parties cannot enter into a Damron Agreement because, as an excess policy, intervenors' duty to defend was not triggered until the primary and other underlying policies were exhausted. (Doc. 47). In later briefing, it became clear that the Wesco and Hallmark insurance policies have been exhausted. (Doc. 60). Thus, the Court finds that, to the extent intervenors had a duty to defend (which they dispute), it has been triggered as of the filing at Doc. 60.

The Court, however, must decide whether intervenors' duty to defend was "triggered" by tender or by exhaustion of the primary and other excess policies. This timing is critical in this case because intervenors are now prepared to take over the defense of this case (under a reservation of rights). (Doc. 61). However, the settling parties argue that the intervenors, having already denied coverage and having refused to participate in the mediation of this case following tender, should not be allowed to revisit that decision for purposes of thwarting a Damron Agreement. (Doc. 60 at 3-6).

The settling parties rely on *Colorado Casualty Insurance Co. v. Safety Control Company*, 288 P.3d 764 (Ariz. 2013), to argue that the parties can enter into a Damron Agreement when one insurance company refuses to defend, even if another insurance company is providing a defense. However, the Court finds this case inapposite because in *Colorado Casualty* the excess insurer defended when a primary carrier denied coverage. Thus, that case does not address when a second excess company's duty to defend is triggered.

The March 9, 2017 letter intervenors sent to Vahik Alaverdyan denying coverage (Doc. 54-1 at 1-7) denied coverage under the intervenors' policy for a myriad of reasons.[3]

---

[3] Also on March 9, 2017, intervenors sent a similar denial letter to Quantum. (Doc. 48-2 at 1-7).

- 4 -

One of the reasons specifically referenced in the letter was that the policy was excess to other policies that were currently providing a defense. (Doc. 54-1 at 6). This basis for denying coverage at least left open the door that if the other policies were exhausted, intervenors' policy would be triggered. Conversely, the letter certainly does not indicate that if all primary policies were exhausted, intervenors would step in and provide a defense. Instead, the letter listed many other reasons coverage was being denied. Thus, nothing in the letter indicated that "re-tender" after exhaustion would produce a different result.

At this point, as far as the Court can summarize, intervenors' position is that they are permitted, now that the other policies are exhausted, to take over the defense in this case (under a reservation of rights). Intervenors' position is that their prior denials of coverage have no effect on their ability to change their minds and begin defense now that exhaustion has occurred. The settling parties' position is that intervenors previously denied coverage, and that the prior denial is binding and final. In other words, intervenors cannot wait for a Damron Agreement (which was entered into by the settling parties in reliance on intervenors' prior denial) to recant the prior denial; thereby allowing intervenors to assume defense of this case (presumably solely for the intervenors' own benefit of converting the Damron Agreement into a Morris Agreement).

In the Court's view, neither party has adequately briefed this timing/trigger issue. Thus, the Court will order supplemental briefing that must address: 1) the timing of when a duty to defend is triggered for an excess carrier (at the point of tender, the point of exhaustion of other policies, or at some other time); and, 2) whether, even if the triggering of the duty to defend does not arise until exhaustion of any primary or first excess policies, the excess carrier is permitted to recant a prior coverage/defense/indemnity decision on which the parties relied in reaching a settlement.

### D. Reasonableness Hearing

Finally, while intervenors vehemently dispute whether the agreement in this case is in fact a Damron Agreement; intervenors appear to agree that no reasonableness

hearing is necessary in Damron Agreement cases (and instead reasonableness hearings are conducted only in Morris Agreement cases). (Doc. 47-2 at 6-10). Thus, if the Court determines this is a Damron Agreement, the Court will not hold a reasonableness hearing.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the motion to supplement is granted (Doc. 55).

**IT IS FURTHER ORDERED** that the motion to intervene for the limited purpose of opposing the stipulated judgment (Doc. 46) is granted.

**IT IS FURTHER ORDERED** that the stipulation (Doc. 42) is denied without prejudice. The settling parties may, within 14 days, file a motion for entry of a stipulated judgment. In that motion, the settling parties must address the timing/triggering issues discussed above. The settling parties must also submit a new proposed stipulated judgment, which must include ALL defendants. Intervenors must respond to the motion in 14 days.[4] The settling parties may reply in 7 days from the response.[5]

Dated this 19th day of September, 2017.

James A. Teilborg
Senior United States District Judge

---

[4] Intervenors should not use their response to re-raise the issues of coverage or tender as those have been addressed by this Order.

[5] The Court admonishes all counsel that they must comply with the Administrative Policies and Procedures Manual and submit paper courtesy copies to the Court. To date, only intervenors have been submitting courtesy copies. However, intervenors are admonished to bind all courtesy copies and quit sending 100s of pages in loose form.